Filed 5/19/26  P. v. Randle CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WYCHANE RANDLE,<br>MARCUS BROADNAX and<br>EDWARD FURDGE,<br><br>    Defendants and Appellants. | B344060 and B342241<br>(Los Angeles County<br> Super. Ct. Nos. BA450440,<br> BA450440-02, BA450440-03) |

APPEAL from orders of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant Wychane Randle.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant Marcus Broadnax.

Jennifer Peabody and Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant Edward Furdge.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General,

Noah P. Hill, Supervising Deputy Attorney General, Eric J. Kohm and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

——————————

**INTRODUCTION**

In 2015, defendants Wychane Randle, Marcus Broadnax, and Edward Furdge (collectively, defendants) were involved in a gang-related shooting. Pursuant to plea agreements, Randle and Broadnax both pled no contest to two counts of attempted murder in 2020, and Furdge pled no contest to second degree murder in 2021. Defendants subsequently filed Penal Code section 1172.6 petitions,[1] seeking resentencing relief for their convictions. Following a consolidated evidentiary hearing, the trial court denied the petitions. We affirm.

**BACKGROUND**

Because defendants pled no contest prior to trial, we derive the facts recounted below from the preliminary hearing transcript. We also grant Randle's request to take judicial notice of the transcript, which the parties and the trial court relied on at the evidentiary hearing (§ 1172.6, subd. (d)(3)).

I.  *The Shooting*

On June 10, 2015, three individuals were shot near the intersection of 88th Street and Vermont Avenue in Los Angeles. Mykel Washington was fatally shot while crossing the street to get into Michael Baptist's car.

---

[1]  All further statutory references are to the Penal Code unless otherwise stated.

2

Baptist was shot seven times while sitting in the driver's seat of his parked car. Lisa Jack was shot in her right hip while on the sidewalk attempting to avoid the gunfire. Law enforcement obtained surveillance footage from a nearby liquor store that covered the area where the shooting occurred. The video captured three vehicles stopping alongside Baptist's car as they approached the intersection. An occupant of the first vehicle exited the front passenger side door, walked towards Baptist's car, and shot multiple times, first at Washington crossing the street, then at Baptist, and finally turning towards Jack. At the time of the shooting, another occupant of the first vehicle in the rear passenger side seat opened his door and kept an eye on the shooter and only closed the door once the shooter returned. The second car quickly followed the first car through the intersection.

The driver of the third vehicle, Patrick Bell, testified about the shooting. Bell was driving a white car south on Normandie Avenue when he saw two cars that he recognized driving north on the same street. Edward Furdge was driving the first car, a brown Saturn, and Randle was driving the second car, a black Monte Carlo. Cleo Steele and Broadnax were passengers in Furdge's car. Bell saw several hands from the Saturn "flagging" him down, so he turned around and followed them north on Normandie. The three cars turned west on 88th Street and stopped at a light at the intersection of Vermont Avenue and 88th Street. Monarch Liquor was located at the southwest corner of the intersection, and a pawn shop was across the street, at the northwest corner. Bell heard gunfire "rain[] down" and saw Steele shooting and "someone drop." Steele had a handgun with an extended clip. Bell turned left on Vermont and drove away. Bell testified that the shooting took place in Eight Tray Gangsters' territory, which was a

3

rival gang of the Underground Crips. At the time, Bell was a member of the Underground Crips.

Baptist testified that he parked his car on the southside of 88th Street, near Monarch Liquor. Baptist was sitting in the driver's seat and "Spider" was sitting in the front passenger seat. Washington started walking towards Baptist's car from the pawn shop. As he reached the middle of the street, Spider said, "Oh, shit," and got out of the car and started running. Baptist then heard gunshots. Baptist was hit by seven bullets: three bullets in his left leg, one in his right, two in his back, and one in his face. Baptist saw Washington fall to the ground and then peppered by gunshots. Someone outside the driver's side of the car said to Baptist, "Nigga, you next."

Jack testified that she walked across 88th Avenue and sat on a crate behind Monarch Liquor. Jack heard gunshots. She jumped off the crate and tried to duck behind some trash cans. Jack was shot on her right hip. Jack testified that she knew Baptist and probably spoke to him before she sat down. Robby Cooper, a bus driver, testified that he was driving north on Vermont and stopped at a red light at the intersection on 88th Street. Cooper heard gunshots and saw a man (later identified as Steele) "run and jump into an open, moving car" at the southwest corner of 88th Street and Vermont, and the car sped off.

A gang expert, a Los Angeles County Sheriff's Department detective, testified that the Underground Crips and Eight Tray Gangster Crips were rivals. Steele (the shooter), Randle, Broadnax, and Furdge were members of the Underground Crips. Washington was a member of the Eight Tray Gangster Crips. The area of 88th Street and Vermont was Eight Tray Gangster Crips territory. He further testified that at the time of the June 10,

4

2015 shooting, there was a lot of tension between the two gangs, and there was "a rash of shootings" back and forth between the gangs.

The expert was given a hypothetical based on the facts of this case, and he opined that the crimes were committed for the benefit of and in association with a criminal street gang. The expert explained that "the benefit would come from committing a crime during daylight hours . . . within a rival territory" as "such violent crime begets another crime that would enhance their reputation as being a violent gang." As to the association element, "there's multiple vehicles involved and multiple gang members committing the crime together, one being a follow car. This would help them get away in case there's law enforcement nearby. It would be harder to follow two vehicles as opposed to one. . . . [A]lso, if the victim or victims intended to shoot back, there would be multiple people there to help."

II.    *The Plea Agreements*

Prior to trial, defendants entered into plea agreements with the People. In March 2020, both Randle and Broadnax pled no contest to the attempted murders of Baptist and Jack and admitted to the gang allegations (§§ 664/187, subd. (a), 186.22, subd. (b)(1)). In exchange for their pleas, the trial court dismissed the remaining counts against them and sentenced them both to 17 years in state prison. In June 2021, Furdge pled no contest to second degree murder (§ 187, subd. (a)), and, in exchange, the court dismissed the remaining counts against him and sentenced him to 15 years to life in state prison.[2]

---

[2] A jury convicted Steele of two counts of first degree murder (§ 187, subd. (a)), four counts of attempted murder (§§ 664/187, subd. (a)), two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1)), shooting at an occupied motor vehicle (§ 246), gang and weapons enhancements (§§ 186.22,

III.    *Petitions for Resentencing*

In 2022, Randle, Broadnax, and Furdge filed, in propria persona, section 1172.6 resentencing petitions.  Defendants were subsequently appointed counsel.  The trial court found defendants had made a prima facie case for relief and issued an order to show cause.

On November 13, 2024, the trial court held an evidentiary hearing on defendants' petitions.  The court and the parties relied on the preliminary hearing transcript, including the surveillance video that was admitted at the hearing.  After argument, the court denied the petitions, finding beyond a reasonable doubt that all "defendants were aiding and abetting with [a] specific . . . intent to kill[,] that is express malice."  Alternatively, the court found defendants ineligible as a matter of law because at the time of their pleas, the prosecution could not have proceeded under an imputed malice theory of murder or attempted murder.

Defendants appealed.[3]  Furdge's appointed counsel filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216, asking this court to independently review the record to determine if there are any arguable errors that would result in a disposition more favorable to him.  Furdge filed a supplemental brief.

---

subd. (b), 12022.53, subd. (e)(1)), and special circumstance allegations (§ 190.2), stemming from not only the June 2015 incident but also another incident in March 2015.

[3] On our own motion, we consolidated the appeals for the purposes of oral argument and decision.

6

## DISCUSSION

I. *Overview of Sentencing Procedure*

In 2018, the Legislature enacted Senate Bill No. 1437, effective January 1, 2019, "'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to amending the Penal Code, Senate Bill No. 1437 added section 1170.95 (now 1172.6), "which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

Upon the filing of a facially sufficient resentencing petition, the superior court must conduct a prima facie analysis to determine the petitioner's eligibility for relief, and, if the requisite prima facie showing is made, issue an order to show cause. (§ 1172.6, subd. (c); *People v. Wilson* (2023) 14 Cal.5th 839, 869 (*Wilson*); *People v. Nieber* (2022) 82 Cal.App.5th 458, 469–470.) At the evidentiary hearing following issuance of an order to show cause, the superior court acts as an independent fact finder, and the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder under current California law. (§ 1172.6, subd. (d)(3); *Wilson, supra*, at p. 869.)

II. *Standard of Review*

"On appeal from the denial of a section 1172.6 petition after an evidentiary hearing, we review the superior court's factual findings for

substantial evidence and the court's application of the law to those facts de novo. (*People v. Wilson* (2023) 90 Cal.App.5th 903, 916.) In conducting our review, we consider the whole record in the light most favorable to the superior court's findings (*People v. Rivera* (2019) 7 Cal.5th 306, 323), and we presume ""every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence."" (*Id.* at p. 331.) We ask 'whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt.' (*People v. Vargas* (2020) 9 Cal.5th 793, 820.) And based on this whole record review, we "'determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.'" (*People v. Montanez* (2023) 91 Cal.App.5th 245, 270.) Finally, our Supreme Court has held that whether the prosecutor relied upon direct or circumstantial evidence, if the trier of fact's determination is supported, reversal is not warranted, even where ""the circumstances might also reasonably be reconciled with a contrary finding."" (*Vargas,* at p. 820, quoting *Rivera,* at p. 331.)" (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)

III.    *Ineligible as a Matter of Law*

Randle and Broadnax contend, and the Attorney General agrees, that the trial court erred in denying their petitions for resentencing on the alternative ground that at the time of the plea, they could not have been prosecuted under an imputed malice theory for attempted murder. We also agree.

Senate Bill No. 1437 took effect on January 1, 2019. However, a split of authority developed in the Courts of Appeal on whether the statute

8

eliminated imputed malice liability for attempted murder as well. (See *People v. Gallegos* (2024) 105 Cal.App.5th 434 [noting split in authority].) The Legislature resolved the dispute by enacting Senate Bill No. 775, which took effect on January 1, 2022, "to make clear the natural and probable consequences doctrine no longer supplies accomplice liability to attempted murder." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 193.) When Randle and Broadnax entered their pleas in 2020, the law remained unsettled as to the impact of Senate Bill No. 1437 on attempted murder, and Randle and Broadnax still could have been convicted of that offense pursuant to the natural and probable consequences doctrine. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 [when "appellate decisions are in conflict" a "court exercising inferior jurisdiction can and must make a choice between the conflicting decisions"].) While we agree the court erred in denying their petitions on this alternative basis, we conclude that the error was harmless for the reasons set forth below.

In his supplemental brief, Furdge contends the trial court erred in denying his petition for resentencing on this basis as well. We disagree. Unlike Randle and Broadnax, Furdge pled no contest to second degree murder. The trial court was correct in finding that defendants, like Furdge, who were convicted of murder by plea after Senate Bill No. 1437 took effect are categorically ineligible for relief under section 1172.6. (*People v. Hickman* (2025) 110 Cal.App.5th 1262, 1264–1265; *People v. Lezama* (2024) 101 Cal.App.5th 583, 590; *People v. Gallegos, supra,* 105 Cal.App.5th at p. 443; *People v. Reyes* (2023) 97 Cal.App.5th 292, 296.) By the time Furdge entered his plea, the invalid theories of murder liability had been eliminated by Senate Bill No. 1437 so the prosecution could no longer have convicted him of murder by way of an invalid theory of imputed malice. Thus, Furdge fails

to demonstrate that he could not presently be convicted of murder because of changes to section 188 and 189 made effective January 1, 2019. We reject Furdge's argument involving the unsettled nature of the law after Senate Bill No. 1437's effective date and affirm the trial court's order denying his resentencing petition.

IV. *Sufficiency of the Evidence*

Next, Randle asserts there was insufficient evidence to support the trial court's finding that he was an aider and abettor who acted with express malice as to the attempted murder of Jack.[4] Broadnax challenges the insufficiency of the evidence to support aider and abettor liability as to both the attempted murder convictions of Jack and Baptist.

Attempted murder is defined as a " 'specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " (*People v. Falaniko* (2016) 1 Cal.App.5th 1234, 1242.) To establish a defendant aided and abetted that crime, there had to be sufficient evidence he or she, "(i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aid[ed], promote[d], encourage[d] or instigate[d] the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Mere presence at the scene of a crime or knowledge of, but failure to prevent the crime, are not sufficient to establish aiding and abetting its commission. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) However, factors which may be considered to

---

[4] Randle concedes there was sufficient evidence to support his attempted murder conviction of Baptist.

10

determine aiding and abetting include presence at the scene of the crime, companionship, and conduct before and after the offense.  (*Ibid*.)

There was substantial evidence that Randle and Broadnax directly aided and abetted the attempted murders of both Baptist and Jack and harbored an intent to kill.  While gang evidence alone cannot prove a defendant is an aider and abettor to a crime (*People v. Guillen* (2014) 227 Cal.App.4th 934, 992), it is relevant to show motive for the crime, which is often probative of intent to kill (*People v. Smith* (2005) 37 Cal.4th 733, 740–741; *People v. Iraheta* (2017) 14 Cal.App.5th 1228, 1252–1253; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167–1168).  Here, Furdge drove his fellow gang members, Steele and Broadnax, into rival gang territory.  Randle, another fellow gang member, was following the group in a separate car.  Upon entering rival territory, Steele was armed with a handgun that had an extended clip.  The gang expert testified that, at the time of the shooting, there was tension between the Underground Crips and Eight Trey Gangster Crips, and that there was a "rash of shootings" back and forth between the gangs.  This evidence supports the finding that the shooting was a planned and coordinated attack in rival gang territory, rather than a spontaneous decision.

In addition, there was sufficient evidence to establish Steele intended to kill the victims (specifically, Baptist and Jack) as they appeared to be members or associates of a rival gang.  The intent to kill can reasonably be inferred for the same reason as to Broadnax and Randle.  Prior to the shooting, Jack testified that she probably approached Baptist's car and spoke to him before she sat down on a crate near Monarch Liquor.  At the time of the shooting, Washington, a known rival gang member, was walking across the street to get into Baptist's car.  As can be seen from the surveillance

11

video, Steele directed his gunfire at Washington, turned his focus to Baptist and then finally towards Jack. Randle refutes that he had the requisite intent to kill Jack, arguing that she was merely an unlucky bystander. However, the fact that "the evidence might also reasonably be reconciled with a contrary finding" does not show the evidence was insufficient. (See *People v. Ewing* (2016) 244 Cal.App.4th 359, 380.)

Moreover, Randle and Broadnax facilitated and encouraged the killings of Baptist and Jack. Randle closely followed his fellow gang members into rival gang territory and remained in place during the shooting until Steele returned to Furdge's car. Broadnax can be seen on the surveillance video opening his rear passenger door after Steele exited, keeping watch, and waiting for Steele to return to the car. The gang expert testified that using multiple cars in a shooting would help the gang members get away from law enforcement as it would be harder to follow two vehicles as opposed to one. Also, if any of the victims intended to shoot back, there would be multiple gang members to help.

Randle's and Broadnax's conduct after the shooting further demonstrates their intent to kill. Instead of staying at the crime scene, they both fled with Steele and the other gang members, thereby evidencing consciousness of guilt. (See generally *People v. Bonilla* (2007) 41 Cal.4th 313, 328–329 [circumstances of defendant's departure from crime scene must suggest a purpose to avoid arrest or being observed].)

Accordingly, we conclude there was substantial evidence to support the trial court's finding that Randle and Broadnax were guilty of attempted murder of Baptist and Jack as direct aiders and abettors who acted with express malice.

## DISPOSITION

We affirm the trial court's orders denying defendants' section 1172.6 resentencing petitions.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.


TAMZARIAN, J.